UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANNEL ROBERTSON,<br><br>      Petitioner,<br><br> v.<br><br>JOHN KELLY, et al.,[1]<br><br>      Respondents. | CASE NO. C17-163-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Jannel Robertson, Canadian citizen, brings this 28 U.S.C. § 2241 habeas action to challenge her expedited removal from the United States on September 26, 2016. Judicial review of expedited removal orders is limited by statute, but the parties agree the Court has jurisdiction to consider the narrow issue raised here: whether Ms. Robertson was "ordered removed" under the expedited removal statute, 8 U.S.C. § 1225(b)(1).

Respondents have filed a return memorandum and motion to dismiss, arguing that she was ordered removed. Ms. Robertson contends that she was not ordered removed because the expedited removal order did not include the factual basis for the charges of removability and therefore is facially invalid. As discussed below, the Court concludes that an expedited removal

---

[1] The Clerk is directed to SUBSTITUTE Michele James, Director of Field Operation, Seattle Field Office, U.S. Customs and Border Protection, for respondent Angela Kennally. *See* Fed. R. Civ. P. 25(d); Dkt. 10 at 9 n.2.

REPORT AND RECOMMENDATION - 1

order in fact was issued against Ms. Robertson, and therefore she was removed under 8 U.S.C. § 1225(b)(1).  Accordingly, respondents' motion to dismiss, Dkt. 10, should be **GRANTED**, Ms. Robertson's habeas petition should be **DENIED**, and this action should be **DISMISSED** with prejudice.[2]

## BACKGROUND

### A.   Factual background[3]

On the morning of September 26, 2016, Ms. Robertson arrived by foot at the Peace Arch Point of Entry in Blaine, Washington, seeking admission to the United States.  Dkt. 1 at 2; Dkt. 10-3 at 3.  She was traveling with a Canadian friend, Elizabeth Mayer, and both had backpacks.  Dkt. 1 at 2; Dkt. 10-3 at 3.  During primary inspection, Ms. Robertson reported that she had known Ms. Mayer for two years, that they would be traveling and camping together for about two weeks, and that she planned to stay in the United States for an additional two weeks after Ms. Mayer returned to Canada.  Dkt. 1 at 2-3; Dkt. 10-3 at 3.  Ms. Robertson explained that she was on a six-month leave of absence from her job in Canada and would return to her job after her time in the United States.  Dkt. 10-3 at 3.

U.S. Customs and Board Patrol ("CBP") officers continued to question Ms. Robertson, and they searched her backpack and phone.  Dkt. 1 at 3-7; Dkt. 10-3 at 3-4.  They also searched Ms. Mayer's phone and found a messaging conversation with one of her friends about the

---

[2] Ms. Robertson's request for oral argument, Dkt. 17 at 1, is DENIED.  Oral argument is not necessary where the non-moving party would suffer no prejudice.  *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).  There is no prejudice in refusing to grant oral argument "[w]hen a party has [had] an adequate opportunity to provide the trial court with evidence and a memorandum of law."  *Id.* (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991)) (second alteration in *Partridge*).  "In other words, a district court can decide the issue without oral argument if the parties can submit their papers to the court."  *Id.*; *see also Brockbank v. Staples*, 595 Fed. Appx. 724 (9th Cir. 2015).  Here, the issues have been thoroughly briefed by the parties and oral argument would not be of assistance to the Court.

[3] None of the factual disputes noted herein are material to the resolution of Ms. Robertson's habeas petition.

REPORT AND RECOMMENDATION - 2

prospect of harvesting, also known as "trimming," marijuana in California. Dkt. 10-3 at 3-4. CBP officers asked Ms. Mayer about this conversation, and she said that she had not been offered any work that had come to fruition. *Id.* at 4.

CBP Officer Oscar Medina subsequently placed Ms. Robertson under oath and took a sworn statement from her to determine whether she was inadmissible.[4] Dkt. 10-3 at 4; Dkt. 10-1 at 2. Officer Medina recorded their exchange on Form I-867A, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act. Dkt. 10-4. The form indicates that Ms. Robertson initially reported that she was not coming to the United States to work but then admitted she had friends who were trimming marijuana in California, she was planning on going to California, she had contact information for an American who knew how to get a job as a trimmer, she had not "actually decided" she wanted to harvest marijuana, but "if I was to meet [] good people and it walks on my hands and it was really easy I would do it." *Id.* at 4-6.

After taking Ms. Robertson's sworn statement, Officer Medina determined that: she had misrepresented a material fact that would have resulted in a denial of admission to the United States if it was presented at the primary inspection or secondary interview, namely that Ms. Robertson failed to divulge that it was her intent to trim marijuana in California during her camping trip; she did not possess work authorization documents; and she was inadmissible. Dkt. 10-3 at 4.

Officer Medina asked Ms. Robertson to review the Form I-867A and make any corrections. Dkt. 10-1 at 2. According to Ms. Robertson, there were numerous inaccuracies and omissions. Dkt. 1 at 5. Ms. Robertson maintains that she told Officer Medina she never had any

---

[4] Officer Medina states, "During Ms. Robertson's application for admission to the United States, I placed her in expedited removal proceedings and took her sworn statement on Form I-867A." Dkt. 10-1 at 2. Ms. Robertson states that she was not informed that she was going to be issued an expedited removal order until after she was questioned. Dkt. 1 at 5.

REPORT AND RECOMMENDATION - 3

plans to go trimming or to work in the United States. *Id.* She asserts that the first time she heard about any plans to go trimming in California was when Officer Medina showed her Ms. Mayer's messaging conversation. *Id.* at 4-5. Ms. Robertson claims that Officer Medina refused to correct the Form I-867A and therefore she refused to sign it. *Id.* at 5. According to Officer Medina, after he told Ms. Robertson that she was facing expedited removal, she asked to change most of her answers to make herself admissible to the United States; when he would not make any major changes, she refused to sign the statement. Dkt. 10-1 at 2.

Officer Medina then prepared a Notice and Order of Expedited Removal on Form I-860. Dkt. 10-1 at 3. The expedited removal order that was served on Ms. Robertson included her name, the date, the signatures of Officer Medina and a supervisor, and the charges that she was inadmissible because she sought to gain admission through fraud or willfully misrepresenting a material fact and failed to possess a valid entry document at the time of her application for admission. Dkt. 1-3 at 1-2. The expedited removal order did not include the factual basis for the finding of inadmissibility.[5] Ms. Robertson declined to sign additional paperwork and asked to speak with a supervisor. Dkt. 10-3 at 4; *see also* Dkt. 1-4 at 1. After discussing her concerns with the supervisor, she walked back to Canada. *Id.*

Two days later, Ms. Robertson and Ms. Mayer walked across the border near the Oroville, Washington Port of Entry without being admitted or paroled. Dkt. 10-6. A U.S. Border Patrol officer stopped them about a mile south of the border. *Id.* CBP reinstated Ms.

---

[5] At some point after Ms. Robertson was returned to Canada, Officer Medina noticed that the factual basis for her inadmissibility did not appear on the Notice and Order of Expedited Removal even though he had input the factual basis into CBP's computer system on the afternoon of September 26, 2016. Dkt. 10-1 at 3. He reprinted the Notice and Order of Expedited Removal to include the factual basis and replaced the original form in Ms. Robertson's Alien File without making a notation to the file. *Id.* at 3-4. The revised expedited removal order states: "you misrepresented a material fact, your intention to work as a marijuana trimmer in California without proper work authorization." Dkt. 1-5 at 2.

REPORT AND RECOMMENDATION - 4

Robertson's September 26, 2016 expedited removal order, and the U.S. Attorney's Office for the Eastern District of Washington charged her with illegal reentry. Dkts. 10-7, 10-8, 10-9. The parties resolved the criminal matter with a Pretrial Diversion Agreement. Dkt. 10-9.

**B.    Procedural history**

Ms. Robertson initiated this action on February 2, 2017. Dkt. 1. She makes three claims in her habeas petition: (1) the expedited removal order is contrary to the governing statute, 8 U.S.C. § 1225(b), because the order does not include any factual allegations; (2) the expedited removal order is unlawful because she was never provided notice of the factual allegations against her and an opportunity to respond, as required by 8 C.F.R. § 235.3(b)(2)(i); and (3) the expedited removal order is unlawful because respondents violated the Fifth Amendment's Due Process Clause when they failed to comply with regulations requiring that they create a record of the facts of the case, accurately record her responses to Officer Medina's questions, permit her to make corrections, advise her of the charges against her on Form I-860, and provide her with an opportunity to respond to the factual allegations against her. Dkt. 1 at 9-10.

The Court served the habeas petition and directed respondents to file a return memorandum. Dkt. 8. Respondents timely filed their return memorandum and motion to dismiss, arguing that the Court does not have jurisdiction over Ms. Robertson's claims and, alternatively, CBP's actions comported with due process. Dkt. 10 at 10-19.

Ms. Robertson responded, clarifying and narrowing her claims. Dkt. 17. She acknowledges that judicial review of expedited removal orders is circumscribed, but she argues that it includes review of whether the expedited removal order is facially valid. *Id.* at 1-2, 7, 11, 15-15. According to Ms. Robertson, the only issue presented here is "whether an individual is 'ordered removed' under § 1225(b) where the document served upon the individual has no

REPORT AND RECOMMENDATION - 5

factual allegations whatsoever."[6] *Id.* at 11.

Respondents filed a reply, conceding that the Court has jurisdiction to consider Ms. Robertson's narrowed claim. Dkt. 19-1 at 3-6. They argue, however, that there is no basis for Ms. Robertson's assertion that an expedited removal order is invalid if it fails to include factual allegations. *Id.*

## DISCUSSION

The expedited removal statute provides that when an immigration officer determines that a noncitizen "arriving in the United States" is inadmissible, he or she shall order that the individual be removed "without further hearing or review," unless the individual asserts a claim of asylum or fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(i). Judicial review of expedited removal orders is permitted through habeas proceedings but is limited to determinations of:

(A) whether the petitioner is [a noncitizen],

(B) whether the petitioner was ordered removed under [§ 1225(b)(1)], and

(C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is [a noncitizen] lawfully admitted for permanent residence . . . .

8 U.S.C. § 1252(e)(2); *see also* 8 U.S.C. § 1252(a)(2)(A) (limiting judicial review of expedited removal orders to the exceptions provided in § 1252(e)).[7] The Court agrees with the parties that Ms. Robertson's narrowed claim—whether she was "ordered removed" under § 1225(b) where the expedited removal order served upon her did not include any factual allegations—falls within § 1252(e)(2)(B), and therefore the Court has jurisdiction.

---

[6] It thus appears that Ms. Robertson has abandoned the other claims in her habeas petition, and this Report and Recommendation will address only the narrowed claim in her response brief.

[7] In addition, the Ninth Circuit has allowed due process claims collaterally attacking expedited removal orders in criminal cases where the noncitizen is charged with criminal reentry. *Pena v. Lynch*, 815 F.3d 452, 455-56 (9th Cir. 2015); *United States v. Raya-Vaca*, 771 F.3d 1195, 1202-1207 (9th Cir. 2014). This exception is "strictly limited" to criminal reentry cases, *Pena*, 815 F.3d at 456, and therefore it is inapplicable here.

Congress has expressly defined the scope of inquiry allowed under § 1252(e)(2)(B) as follows:

> In determining whether [a noncitizen] has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the [noncitizen] is actually inadmissible or entitled to any relief from removal.

8 U.S.C. § 1252(e)(5). There is no dispute that the expedited removal order "relates to the petitioner." The only question is whether it "in fact was issued."

Ms. Robertson argues that the document served upon her on September 26, 2016 is insufficient to support the charges of removal because there are no factual allegations. Dkt. 17 at 14. She maintains that this is akin to a criminal prosecution in which the indictment fails to allege any wrongdoing by the defendant, or a civil complaint that contains no factual allegations, only causes of action and a request for relief. *Id.* Ms. Robertson contends that because the document did not include any factual allegations, she never had an opportunity "to respond to those charges in the sworn statement," as required by 8 C.F.R. § 235.3(b)(2)(i). Dkt. 17 at 15 (citing *United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014)).

The primary problem with Ms. Robertson's position is that there is no authority—in the governing statute, regulations, or case law—that requires an expedited removal order to contain factual allegations. The expedited removal statute requires: (1) a determination of inadmissibility by an immigration officer, and (2) an order of removal by the immigration officer. 8 U.S.C. § 1225(b)(1)(A)(i). Officer Medina determined that Ms. Robertson was inadmissible (a conclusion that cannot be challenged here), and he served on her a signed Notice and Order of Expedited Removal that charged her with removability under the expedited removal statute. The statutory elements were satisfied. The Court thus concludes that an

REPORT AND RECOMMENDATION - 7

expedited removal order "in fact was issued." *See M.S.P.C. v. U.S. CBP*, 60 F. Supp. 3d 1156, 1163-64 (D. N.M. 2014) (concluding that "Congress really did mean what it said in the first sentence [of § 1252(e)(5)]—review should only be for whether an immigration officer issued that piece of paper [stamped 'expedited removal order'] and whether the Petitioner is the same person referred to in that order").

The regulations do not change this conclusion. Ms. Robertson cites 8 C.F.R. 235.3(b)(2)(i), which sets forth certain requirements relevant to making a determination of inadmissibility.[8] But the regulations do not address any requirements for issuing an expedited removal order, and the Court does not have jurisdiction to review Officer Medina's determination of inadmissibility. *See* 8 U.S.C. § 1252(e)(5). In addition, the Ninth Circuit's decision in *Raya-Vaca*, which Ms. Robertson cites, is inapplicable here because this is not a criminal reentry case. *See supra* n. 7; *Pena*, 815 F.3d at 455-56. Despite the omission of the factual basis for Ms. Robertson's removal from the expedited removal order, the order in fact

---

[8] The regulation states:

> (2) Determination of inadmissibility—
>
> (i) Record of proceeding. . . . In every case in which the expedited removal provisions will be applied and before removing [a noncitizen] from the United States pursuant to this section, the examining immigration officer shall create a record of the facts of the case and statements made by the [noncitizen]. This shall be accomplished by means of a sworn statement using Form I-867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act. The examining immigration officer shall read (or have read) to the [noncitizen] all information contained on Form I-867A. Following questioning and recording of the [noncitizen's] statement regarding identity, alienage, and inadmissibility, the examining immigration officer shall record the [noncitizen's] response to the questions contained on Form I-867B, and have the [noncitizen] read (or have read to him or her) the statement, and the [noncitizen] shall sign and initial each page of the statement and each correction. The examining immigration officer shall advise the [noncitizen] of the charges against him or her on Form I-860, Notice and Order of Expedited Removal, and the [noncitizen] shall be given an opportunity to respond to those charges in the sworn statement. After obtaining supervisory concurrence in accordance with paragraph (b)(7) of this section, the examining immigration official shall serve the [noncitizen] with Form I-860 and the [noncitizen] shall sign the reverse of the form acknowledging receipt. Interpretative assistance shall be used if necessary to communicate with the [noncitizen].

8 C.F.R. § 235.3(b)(2)(i).

REPORT AND RECOMMENDATION - 8

was issued.

## CONCLUSION AND RIGHT TO OBJECT

The Court recommends that respondents' motion to dismiss, Dkt. 10, be **GRANTED**, petitioner's habeas petition be **DENIED**, and this action be **DISMISSED** with prejudice. A proposed order accompanies this Report and Recommendation

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case. Objections, however, may be filed and served upon all parties no later than **July 10, 2017.** The Clerk should note the matter for **July 14, 2017**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed eight pages. The failure to timely object may affect the right to appeal.

DATED this 19th day of June, 2017.

BRIAN A. TSUCHIDA
United States Magistrate Judge